ORFINGER, J.
GE Fanuc Intelligent Platforms Embedded Systems, Inc. (n/k/a GE Intelligent Platforms Embedded Systems, Inc.) (“GE”), appeals a final summary judgment rendered in favor of Brijot Imaging Systems, Inc. (“Brijot”) in a breach of contract action. In its summary judgment, the trial court found that a release GE sent to Brijot extinguished any and all claims it had against Brijot. On appeal, GE argues that summary judgment was improvidently entered as the release was ambiguous and, in any event, was withdrawn or revoked prior to Brijot’s acceptance of it. We agree that disputed issues of material fact remain and reverse the final summary judgment.
Brijot had a contractual relationship with GE’s predecessor, SBS Technologies — Commercial & Government Products Group (“SBS”). When Brijot terminated its contract with SBS, it acknowledged that it owed SBS $865,887, which it agreed to pay at the rate of $25,000 per month. After several months, Brijot fell behind on the payments and eventually stopped paying all together.
In 2006, GE acquired SBS and sought to collect on Brijot’s unpaid account by assigning the matter to an Ohio law firm. The collection firm wrote Brijot on GE’s behalf, demanding payment in the amount of $76,968. Brijot agreed to pay that amount, in exchange for a full and complete release from GE. GE’s attorneys refused to provide the requested release. Instead, more limited release language was negotiated. Eventually, the collection firm sent Brijot an executed release, releasing Brijot “from all claims and disputes arising from an unpaid GE Fanuc account,” but further providing that the release “shall not affect any other account with GECP[1] or any other claims, causes of actions, accounts, contracts, leases, or agreement which Brijot has or may have with any other division, affiliate, subsidiary, joint venture, or successor of GE Fanuc or related corporations, nor shall it *1245 affect accounts, contracts, leases, or agreements relating to any events, transactions and equipment which are not the subject of the account.” The executed release was sent with instructions, advising Brijot that “[i]n order for the release to be valid, you would need to wire the funds to either our bank or GE’s bank. You may call me for the banking information to accomplish this. OR [sic] you would need to have a certified bank check for the amount in our office no later than Friday, March 28.”
According to GE, before Brijot sent the agreed-upon sum, it realized that Brijot owed it an additional $428,919.08. GE’s attorneys immediately notified Brijot that it had discovered the additional debt and wrote that “[g]iven the new information ... we are rescinding the release document previously forwarded to you for review.” Nonetheless, the next day (or perhaps several days later), Brijot sent a check to a former SBS address in New Mexico for the previously agreed-upon $76,968 settlement. The funds were deposited to a GE account and retained. GE then sued Brijot for the $428,919.08 balance. In response, Brijot pled the affirmative defense of release and ratification, the latter pertaining to GE’s retention of Brijot’s payment while simultaneously attempting to avoid the release.
In its opposition to Brijot’s motion for summary judgment, GE contended that the release, and the $76,968 payment related to a “trade” account and that Brijot had a separate “sundries” account to which the remaining balance pertained. GE contends that because the release only pertained to “an unpaid GE Fanuc account” and not all GE accounts, the release has a latent ambiguity. We agree.
A latent ambiguity arises when the language in a contract is clear and intelligible, but some extrinsic fact or extraneous evidence creates a need for interpretation or a choice between two or more possible meanings. Deni Assocs. of Fla. Inc. v. State Farm Fire & Cas. Ins. Co., 711 So.2d 1135, 1139 (Fla.1998). In such an instance, the intent of the parties can be demonstrated with parol evidence. A latent ambiguity is thus brought to light when extraneous circumstances reveal “an insufficiency in the contract not apparent from the face of the document.” Hunt v. First Nat’l Bank of Tampa, 381 So.2d 1194, 1197 (Fla. 2d DCA 1980).[2] When a latent ambiguity affects a disputed contract provision, there necessarily will be a disputed issue of material fact. Accordingly, “[w]hen an agreement contains a latent ambiguity ... the issue of the correct interpretation of the agreement is an issue of fact which precludes summary judgment.” Mac-Gray Servs., Inc. v. Savannah Assocs. of Sarasota, LLC, 915 So.2d 657, 659-60 (Fla. 2d DCA 2005) (quoting Griffin v. Fed. Deposit Ins. Corp., 532 So.2d 1358, 1360 (Fla. 2d DCA 1988)).
Another material dispute exists regarding GE’s purported revocation of the release prior to Brijot’s acceptance. The trial court concluded that GE was not entitled “to the equitable remedy of rescission” because GE retained the money sent by Brijot. We do not view this matter so much as one concerning contract rescission, but rather, one of contract formation. As a general rule, an offer may be withdrawn at any time before acceptance. Once revoked, a party has no power to accept a revoked offer. Sullivan v. Econ. Research Props., 455 So.2d 630, 631 (Fla. 5th DCA 1984). The evidence viewed in the light most favorable to GE as the non-moving party suggests that its revocation *1246 notice was received by Brijot before Brijot demonstrated its acceptance by payment.
Brijot argues that even if GE revoked its offer to settle, it ratified the transaction by its delay in manifesting its intention to void the transaction and by failing to tender back to Brijot the money it had received. See Rood Co. v. Bd. of Pub. Instruction of Dade County, 102 So.2d 139, 141-42 (Fla.1958); see also 7-28 Arthur L. Corbin, Corbin on Contracts § 28.37 (2002 ed.). This argument is unpersuasive as it has no impact on the scope of the release given. Nor can we say, as a matter of law, that GE unduly delayed manifesting its intent to avoid the transaction by retaining the funds that Brijot acknowledged it owed.
For these reasons, we reverse the summary final judgment and remand this matter for trial.
REVERSED and REMANDED.
SAWAYA and JACOBUS, JJ„ concur.

. GECP appears to be an acronym for GE Company.

. A patent ambiguity, in contrast, appears on the face of the document and may not be resolved by the consideration of parol evidence. Crown Mgmt. Corp. v. Goodman, 452 So.2d 49, 52 (Fla. 2d DCA 1984).