FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

JAMES ALAN PRICE,  )
  )
    Appellant,  )
  )
v.  )    Case No. 2D13-1809
  )
CASTLE KEY INDEMNITY COMPANY,  )
  )
    Appellee.  )
 _____ )

Opinion filed September 3, 2014.

Appeal from the Circuit Court for Polk
County; Steven L. Selph, Judge.

Daniel Phillips of Phillips Law Firm,
Tallahassee, for Appellant.

Darryl L. Gavin and Bret M. Cary of
Rumberger, Kirk & Caldwell, Orlando, for
Appellee.


DAVIS, Chief Judge.

        James Alan Price challenges the trial court's summary final judgment

entered in his breach of contract action against his insurer, Castle Key Indemnity

Company.  Because there are disputed issues of material fact that preclude the entry of

summary judgment, we reverse and remand for further proceedings.

The parties do not dispute that 195,000 gallons of water escaped from an upstairs bathroom in the Price home while the family was out of town for an extended period of at least a month. Due to a dispute over the scope of his insurance coverage, Mr. Price sued Castle Key, and both parties moved for summary judgment. The trial court granted the motion for summary judgment in favor of Castle Key based on the terms of the parties' insurance contract.

On its face, the insurance policy covers "sudden and accidental direct physical loss to property." An exclusion to that coverage is

> [s]eepage, meaning continuous or repeated seepage or leakage over a period of weeks, months, or years, of water, steam, or fuel . . . from, within[,] or around any plumbing fixtures, including, but not limited to shower stalls, shower baths, tub instillations, sinks[,] or other fixtures designed for the use of water or steam.

Here, water flowed from a pipe going to Mr. Price's upstairs toilet for a period of at least thirty-two days. Mr. Price maintains that based on that time frame and the total number of gallons that escaped, the water had to have been exiting the pipe at a rate of 6000 gallons per day. According to Mr. Price, such a rate, at a minimum, creates an ambiguity as to whether the incident could be defined as seepage.[1]  Mr.

---

[1]Castle Key relies on Hoey v. State Farm Florida Insurance Co., 988 So. 2d 99 (Fla. 4th DCA 2008), to support its position that the thirty-two-day duration of the water expulsion triggered the seepage exclusion of the insurance policy. However, Mr. Price argues that Hoey is facially distinguishable because in this case the leak began gradually and increased into a greater amount of water expulsion. We conclude that Hoey is procedurally distinguishable from the instant circumstances because it involves a factual determination at trial over the length of time a leak occurred and whether those facts met the exclusion set forth in the unambiguous terms of an insurance coverage contract. As such, it is only instructive to the instant case as an example of a case where factual questions required resolution by a trier-of-fact and were not resolved by way of summary judgment.

Price further argues that the term "sudden" is not defined in the policy and that his situation should be covered because "sudden" can mean unexpected, a definition that may apply to a flow that occurs over a one-month period. Finally, Mr. Price argues that if wear, age, or rust caused the problem, as alleged by Castle Key, then another clause in the policy still requires coverage for direct physical damage occurring when the identified origins "cause the sudden and accidental escape of water or steam from a plumbing" device. These arguments raise several questions of fact that were before the trial court at the time of the entry of summary judgment.

Ambiguities in the terms of a contract are either patent or latent. Real Estate Value Co. v. Carnival Corp., 92 So. 3d 255, 260 (Fla. 3d DCA 2012) ("The interpretation of a contract, including whether the contract or one of its terms is ambiguous, is a matter of law subject to de novo review. A contract is ambiguous when its language is reasonably susceptible to more than one interpretation, or is subject to conflicting interests. There are two types of ambiguities—patent and latent. Patent ambiguities are on the face of the document, while latent ambiguities do not become clear until extrinsic evidence is introduced and requires parties to interpret the language in two or more possible ways." (citations omitted) (internal quotation marks omitted)).

> A latent ambiguity . . . arises "where the language employed is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among two or more possible meanings." Ace Elec. Supply Co. v. Terra Nova Elec., Inc., 288 So. 2d 544, 547 (Fla. 1st DCA 1974). A latent ambiguity is thus brought to light when extraneous circumstances reveal "an insufficiency in the contract not apparent from the face of the document." Hunt v. First Nat'l Bank, 381 So. 2d 1194, 1197 (Fla. 2d DCA 1980).

Mac-Gray Servs., Inc. v. Savannah Assocs. of Sarasota, LLC, 915 So. 2d 657, 659 (Fla. 2d DCA 2005).

Here, the terms of the insurance contract are not facially ambiguous. However, the basic undisputed facts agreed to by the parties demonstrate the existence of the alleged latent ambiguities in the terms of the contract. Specifically, based on the undisputed fact that a large amount of water flowed over a thirty-two-day period, the meaning of the contractual terms of "seepage" and "sudden" are less than clear. Additionally, the relevant facts regarding the cause of the escaped water—whether it escaped as an escalating leak or as a burst that continued at a constant rate—remain at issue. Because these "latent ambiguit[ies] affecting a disputed contract provision" existed, "there necessarily [existed] a disputed issue of material fact." See id. Accordingly, summary judgment was improper. Id. at 659-60. We therefore reverse the final summary judgment and remand for further proceedings.

Reversed and remanded.

SILBERMAN and WALLACE, JJ., Concur.